## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No: 4:11CR400 HEA (DDN)** |
| | ) | |
| **STERLING CLEGGETT,** | ) | |
| | ) | |
| Defendant. | ) | |

### REPLY OF DEFENDANT STERLING CLEGGETT TO GOVERNMENT'S POST-EVIDENTIARY HEARING BRIEF

COMES NOW Defendant Sterling Cleggett, by and through his attorney Henry M. Miller, and hereby files this reply to the Government's Post-Evidentiary Hearing Brief.

As a preliminary matter, the Government's response questions exactly what specific location information is sought to be suppressed by Mr. Cleggett. Defendant seeks to suppress all location information obtained through the use of cellular telephones and records related to the use of cellular telephones, as well as the direct and indirect products of the Government's unconstitutional conduct, the "fruit of the poisonous tree." Wong Sun v. United States, 371 U.S. 471 (1963).

A primary question presented by both Mr. Cleggett and the Government is whether Mr. Cleggett has a legitimate expectation of privacy in the information that was obtained by the Government though the tracking of the location of cell phones allegedly used by Mr. Cleggett, such that the protections of the Fourth Amendment should apply. The Government opines first that there is no legitimate expectation of privacy because the information emanating from the cell phone is conveyed to a third-party and second that the cell site location information is far too

1

imprecise to intrude upon any legitimate expectation of privacy.

Considering the second issue first, the precision of the cell site location information obtained, the Government's position is at odds with the testimony of their own agent. During the evidentiary hearing, Patrick Budds testified that the cell site location information (which all parties agree is less precise than the GPS information that the Government also obtained from the phones in question) could "pinpoint on a map where your location is" within nine meters all the way up to within 5000 meters. (Ev. Hr. Tr.93-94). The Government's brief comments generally and without supporting authority that the precision of the cell site information can be affected by many factors, including terrain and population density. However, the tracking and cell site location information that was obtained in this case was obtained in a major metropolitan area wherein cell phone towers are numerous, not, for example, a rural area where the nearest cell phone tower might be in the next county. In any event, Mr. Budd's confirmed that agents were able to locate Mr. Cleggett via the information conveyed by cell phones. (Ev. Hr. Tr. 99). Further, Mr. Budds testified that the Government was obtaining cell site data because they were "trying to map out the events from Tonia's murder," indicating that the Government itself believed the information to be obtained from the cell site data was precise enough to lead to evidence they believed would further their investigation. (Ev. Hr. Tr. 141). It is clear from the testimony of the Government's own agent that the cell site location information obtained, even absent the precision location information and GPS information, is considered by the Government to be precise enough to be used to further an investigation. If the information were not precise enough to be of great use to the Government, then certainly the Government would not seek to obtain the information to begin with.

2

The question then turns to whether there is a legitimate expectation of privacy even though the cell site location information is produced by and stored by a third party. The primary complicating factor in analyzing this issue is the lack of well-settled law. There is no argument that the technology in question here is relatively new technology, and that the Courts have not yet developed a solid and widely accepted legal analysis of this new technology's Fourth Amendment implications. This complication comes to the forefront as both the Government's brief and the cases that have considered the issue thus far try to apply reasoning that was applied to calls emanating from land line-based telephones in the 1970s to the far more advanced technology of today.

For example, the Government sites <u>Smith v. Maryland</u>, 442 U.S. 735 (1979) for the proposition that there is no subjective expectation of privacy in dialed telephone numbers. However, the reasoning of <u>Smith</u> does not apply to the case at bar, because the issue is not simply whether or not one phone dialed a certain number, but instead the Government's ability to use the information held by the phone company to *track the movements of* the person who allegedly was using a cell phone at a given time, a technology that was little more than science fiction at the time <u>Smith</u> was decided. Further, the Smith court went on at length discussing the notice that telephone service customers receive that their dialed numbers were being recorded. For example, the Court stated:  "All subscribers realize, moreover, that the phone company has facilities for making permanent records of the numbers they dial, for they see a list of their long-distance (toll) calls on their monthly bills."  <u>Smith</u> at 742.  The Court also noted that "most phone books tell subscribers . . . that a company can frequently help in identifying to the authorities the origin of unwelcome and troublesome calls."  <u>Smith</u> at 743.  The cellular phone

subscriber of today has similar notice regarding dialed calls, as many cell phone bills provide a list of what calls were made over the period of the bill.  However, the cell phone user has no such notice that a continuous and permanent record of his or her physical movements and locations is created with each call.

This ability to use the information to track movements draws the information sought by the Government to a level of intrusion upon the privacy of the individual, Defendant would argue, similar to listening to the contents of the conversation itself. What if the cellular provider began keeping electronic recordings of the conversations themselves? Would the Government then be able to argue that because these records were kept by a third-party a defendant would have no right to privacy in those records? Here, we have a serious intrusion on the cellular telephone subscriber's right to privacy because of the information sought. This is not simply a request for numbers dialed or billing records. The Government can argue that the location records sought are imprecise or are in the possession of a third-party, or are otherwise information to which it is entitled, but their position all boils down to this: it is the Government's desire to obtain these records to track the movements of a private individual; to use the cellular phone as a tracking device precisely as a tracking device is defined by 18 U.S.C. Section 3117: an electronic device which permits the tracking of the movement of a person or object. Other than listening to the conversation itself, there can be no greater intrusion on the privacy of that individual, clearly implicating the Fourth Amendment and the requirement that this intrusion should only be allowed after the issuance of a warrant based upon probable cause, if at all.

 Nor does the reasoning of United States v. Miller, 425 U.S. 435 (1976) apply to this case. Miller was a case involving bank records. In such a scenario, the individual clearly has

notice that the records in question are either being conveyed to a third-party by the individual, or that they are records being kept in the normal course of business. It is obvious in every bank transaction that records are being generated and retained by the bank. As pointed out in the Government's brief, it is also clear to a person making a call on a cellular telephone that information is being conveyed to the cellular telephone company by the caller's phone in order for the call to be completed. What is not known by the average person making the call, unlike a party to a bank transaction, is what type of information is being retained by the cell phone company. This is expressed in the case previously cited by Defendant, In the Matter of the Application of the United States of America for an Order (1)Authorizing the Use of a Pen Register and Trap and Trace Device; (2)Authorizing Release of the Subscriber and Other Information; and (3) Authorizing the Disclosure of Location Based Services, 727 F. Supp. 2d 571 (W.D.Tex 2010) at 576 wherein it is stated "Americans do not generally know that a record of their whereabouts is being created whenever they travel about with their cell phones, or that such record is likely maintained by their cell phone providers and is potentially subject to review by interested Government officials." The Court goes on to discuss other legislation, specifically E-911 legislation (and further discussed in Mr. Cleggett's codefendant's post-evidentiary hearing brief) wherein Congress itself recognized that cell phone users have an expectation of privacy in their location information. There can be no doubt that a cell phone user has an objectively reasonable expectation of privacy in his cell location information.

Whether or not a person is alleged to be involved in illegal activity makes no difference in the analysis of whether the expectation of privacy in this information is reasonable, or whether the expectation is one that society is prepared to recognize. *See concurrence of Judge Donald*,

United States v. Skinner, 2012 WL 3289801 (6th Cir. Aug. 14, 2012).

The question presented herein has far-reaching implications as it calls into question whether the Government should be able to infringe on an individual's right to privacy by using the individual's cell phone to track their movements without the knowledge of that individual, as the Government has done in this case. As we have reached an age where most everyone carries a cell phone, the determination of this question is of the utmost importance. It is the position of Mr. Cleggett that if the Government is to be allowed to infringe upon this right to privacy and use an individual's cell phone as a tracking device, as it has here, the Government should be required to follow the requirements of Rule 41 and make a showing of probable cause whether it seeks historical or prospective cell site data and especially in situations where it seeks precision location information and GPS information.

WHEREFORE, Mr. Cleggett respectfully requests this Court enter an order suppressing the illegally obtained cell site location information and precision location information obtained in this case, further requests an order granting all motions to suppress filed in this case and requests such other and further relief as the Court deems appropriate in the circumstances.

Respectfully submitted,

/s/ Henry M. Miller
HENRY M. MILLER, #48790MO
Margulis, Grant and Margulis, P.C.
11 South Meramec, Suite 1330
St. Louis, Missouri 63105
314.721.6677
Facsimile: 314.721.1710

6

*Attorney for Defendant*

## **Certificate of Service**

      I hereby certify that on November 27, 2012, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Tiffany Becker, Assistant United States Attorney.

                    /s/ Henry M. Miller