UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:11CR400 HEA |
| STERLING TERRELL CLEGGETT, | ) ) ) |
| Defendant. | ) |

**OPINION, MEMORANDUM AND ORDER**

This case is before the Court on Defendant's Motion for Compassionate Release or Reduction in Sentence under 18 U.S.C. § 3582(c)(1)(A)(i), [Doc. No. 861]. Counsel entered her appearance on behalf of Defendant and filed a Notice of Intent not to file Supplemental Motion. The United States did not reply to Defendant's Motion. For the reasons set forth below, the Motion is denied.

**Background**

On February 21, 2014, Defendant pleaded guilty to: one count conspiracy to distribute and possess with intent to distribute cocaine, cocaine base, and marijuana in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), and (b)(1)(C); one count possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1); and one count possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). Defendant's conviction was based on his

conduct while serving as one of the leaders of a conspiratorial drug distribution cell in the St. Louis area. Defendant and co-conspirators arranged for the transportation of large amounts of cocaine and marijuana from California to St. Louis for distribution from 2009 through October 2011. They would then distribute the marijuana and cocaine to distributors who would sell the drugs to others. Defendant possessed, purchased, and sold firearms in furtherance of the conspiracy.

On May 21, 2010, Defendant's girlfriend, T.P., was arrested after retrieving a package containing 15.02 kg of marijuana from the Post Office. T.P. made statements to law enforcement officers regarding Defendant's ownership of the package, said she had received other packages for Defendant, and said she was six weeks pregnant with Defendant's child. Defendant and a co-conspirator became aware that the package had been seized and that T.P. had made statements to federal investigators. Afterward, T.P. sent text messages indicating that Defendant had lied to her, was a drug dealer, and that he was acting like she was the "enemy." On May 30, 2010, T.P. was shot and killed in St. Louis.

There was also evidence that Defendant and his codefendants participated in a conspiracy to commit the murder for hire of two individuals that broke into a codefendant's residence. On October 16, 2010, wiretap interceptions indicated that

Defendant was postponing the murder-for-hire plot because too many people had become aware of the plot.

During telephone calls intercepted by investigators between September 9 and November 29, 2010, Defendant was overheard engaging in the conspiracy to sell cocaine, crack cocaine, and marijuana. During one such call, Defendant told a codefendant that he had one to two kilograms of cocaine for sale for $32,000 a kilogram. In another call, Defendant told a codefendant that he had 10 pounds of marijuana for sale at $750 per pound. In other calls, Defendant discussed the price of cocaine with his codefendant supplier and told another codefendant he would call the supplier to make sure the supplier had the codefendant's "order" of five kilograms of cocaine. A September 1, 2011, search of Defendant's residence resulted in the seizure of eight pounds of marijuana, three handguns, drug ledgers, and $2,400 in drug proceeds.

On May 14, 2014, this Court sentenced Defendant to a total term of 282 months imprisonment followed by a five-year term of supervised release. Defendant is presently serving his sentence at McDowell FCI in West Virginia, with a projected release date of December 22, 2032. *Find an inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited April 18, 2021).

**Defendant's Motion**

On November 24, 2020, Defendant filed his motion for compassionate release due to the incapacitation of the caregivers of two of his minor children. In the motion, Defendant states that he has three minor children: a son, S.C., of whom he had custody prior to going to prison; a daughter, G.C., whose mother was recently diagnosed with bipolar schizophrenia and is now unable to take care of G.C.; and, a daughter, L.C., whose mother is Defendant's fiancée and regularly takes the three children to visit Defendant. In his motion, Defendant claims that G.C. is without a caregiver due to her mother's incapacitation by mental illness. He further asserts that L.C.'s mother, his fiancée, has contracted COVID-19 from her work in a nursing home, is incapacitated, and therefore needs Defendant at home to care for L.C. Finally, Defendant asks the Court to consider that the pandemic has also affected the BOP.

Defendant attaches to his motion a compassionate release rejection letter from the warden of his facility dated July 22, 2020, a release plan stating that upon release he would live with his fiancée and their daughter, L.C. in St. Louis County, and that G.C. will also live with them. He states that he has a driving job waiting with a trucking company owned by his fiancée. Defendant's BOP records show that he has taken several classes, completed drug education, and has a clean

4

disciplinary record. He also attaches his previous correspondences with administrators at McDowell FCI regarding his compassionate release request.

## Discussion

Under Section 603(b) of the First Step Act, effective December 21, 2019, an inmate may now himself (or through his advocate) file a motion for compassionate release pursuant to 18 U.S.C. § 3582(c). Previously, a court could only act to reduce a defendant's sentence for "extraordinary and compelling reasons" if the Director of BOP filed such a motion. As the proponent of the motion, Defendant bears the burden of proving both that he has satisfied the procedural prerequisites for judicial review and "extraordinary and compelling reasons" exist to support the motion. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.").

The First Step Act requires a defendant to petition the Bureau of Prisons for release before he can petition the court directly. 18 U.S.C. § 3582(c)(1)(A)(i). Defendant bears the burden of showing that he exhausted his administrative remedies with the Bureau of Prisons before filing a compassionate-release motion. *United States v. Kinley*, No. 1:16-CR-10018-003, 2020 WL 2744115, at *2 (W.D. Ark. Apr. 17, 2020). Here, Defendant has shown that he petitioned the warden for

5

compassionate release but was denied, fulfilling the procedural prerequisites for judicial review.

In evaluating a defendant's request for reduction in sentence on its merits, 18 U.S.C. § 3582(c)(1)(A)(i) requires a court to find that "after considering the factors set forth in section 3553(a) to the extent they are applicable," that "extraordinary and compelling reasons warrant such a reduction." Any reduction must be consistent with applicable policy statements issued by the United States Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). United States Sentencing Guideline 1B1.13,[1] which governs compassionate release reductions, provides some specific

---

1 Sentencing Guidelines section 1B1.13 and its Application Note 1 have not been amended to reflect the changes made by the First Step Act, because the United States Sentencing Commission has not had a quorum since the passage of the Act. Guidelines Section 1B1.13 appears inconsistent with the amended statute because it requires the BOP Director to make a motion for compassionate release. Application Note 1 appears inconsistent with the new law because its list of specific reasons that could justify compassionate release (medical condition, age, family circumstances) are not required by the statute and its catch-all "other reasons" subsection requires the BOP Director to determine what are "extraordinary and compelling" reasons. Based on interpretation of the statute's language, several of the U.S. Circuit Courts of Appeals and district courts have found the guideline is inapplicable to First Step Act motions filed by prisoners and does not limit the factors a district court may consider. See United States v. McCoy, 981 F.3d 271, 281-82 (4th Cir. 2020) (citing cases).

The Eighth Circuit Court of Appeals has not yet articulated the extent of a district court's discretion under the First Step Act to determine whether extraordinary and compelling reasons exist for compassionate release, but it has recognized that such discretion exists. See United States v. Rodd, 966 F.3d 740, 746-47 & n.7 (8th Cir. 2020). The Second Circuit Court of Appeals examined the First Step Act in depth in United States v. Brooker (Zullo), 976 F.3d 228 (2d Cir. 2020). The district court denied defendant Zullo's motion for compassionate release relying on Guideline § 1B1.13, "which seemingly still required a motion by the BOP." Id. at 234. The Second Circuit analyzed the First Step Act's language and held it allows courts independently to determine what reasons, for purposes of compassionate release, are "extraordinary and compelling," id. at 236, and that Guidelines § 1B1.13 Application Note 1(D) applies *only* where a First Step Act motion is filed by the BOP. Id. at 230, 236. The Second Circuit concluded "the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion." Id. at 237.

The Second Circuit also observed, "It bears remembering that compassionate release is a misnomer. 18 U.S.C. § 3582(c)(1)(A) in fact speaks of sentence reductions. A district court could, for instance, reduce but not eliminate a

examples, including:

> (A) Medical Condition of the Defendant.—
>
> > (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

---

defendant's prison sentence, or end the term of imprisonment but impose a significant term of probation or supervised release in its place." Id. at 237. "Beyond this, a district court's discretion in this area—as in all sentencing matters—is broad. The only statutory limit on what a court may consider to be extraordinary and compelling is that "[r]ehabilitation ... *alone* shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t) (emphasis added)." Id. at 237-28 (internal citation and footnote omitted).

The Sixth Circuit Court of Appeals followed the Second Circuit and held that the First Step Act's passage rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release." United States v. Jones, 980 F.3d 1098, 1109 (6th Cir. 2020) (citing Brooker, 976 F.3d at 234). The Sixth Circuit concluded, "Until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." Id. In sum, "In cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." Id. at 1111.

The Seventh Circuit Court of Appeals also reached the same conclusion, holding that "Section 1B1.13 addresses motion and determinations of the [BOP] Director, not motions by prisoners." United States v. Gunn, 980 F.3d 1178, 1180 (7th Cir. 2020) (citing Brooker, 976 F.3d 228). The Seventh Circuit found that "the Sentencing Commission has not yet issued a policy statement 'applicable' to [prisoners'] requests." Id. The court concluded, "Until ... § 1B1.13 is amended, ... the Guidelines Manual lacks an 'applicable' policy statement covering prisoner-initiated applications for compassionate release. District judges must operate under the statutory criteria—'extraordinary and compelling reasons'—subject to deferential appellate review." Id.

The Fourth Circuit Court of Appeals "agree[d] with the Second Circuit and the emerging consensus in the district courts: There is as of now no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are 'empowered ... to consider *any* extraordinary and compelling reason for release that a defendant might raise.' " McCoy, 981 F.3d at 284 (quoting Brooker, 976 F.3d at 230) (holding the severity of defendants' sentences as a result of "stacking" under former 18 U.S.C. § 924(c), coupled with the disparity between those sentences and the sentences they would receive today, constituted extraordinary and compelling reasons for relief under the First Step Act).

The Court believes that in the absence of an amended policy statement, 1B1.13 provides guidance for consideration. In any event, the Court's decision is based on lack of extraordinary circumstances under any consideration thereof and the failure of Defendant to establish he is no longer a danger to the community, as discussed, *infra*.

    (ii) The defendant is—

        (I) suffering from a serious physical or medical condition,

        (II) suffering from a serious functional or cognitive impairment, or

        (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.—The defendant (i) is at least 65 years old;

    (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

In support of his request, Defendant cites the incapacitation of his minor children's caregivers, namely, G.C.'s mother's incapacitation due to severe mental illness and the COVID-19-related incapacitation of L.C.'s mother.

The Court does not find that Defendant has met his burden of proving that extraordinary and compelling circumstances exist warranting a reduced sentence. The First Step Act Compassionate Release Report filed by the United States Probation Office in this case indicates that a probation officer spoke to G.C.'s legal guardian, her maternal aunt. G.C.'s aunt stated that she has sole custody of G.C. in California, and that the she has no plan to allow Defendant to share custody of G.C. or to allow G.C. to travel to St. Louis. Therefore, the Court finds that G.C.'s needs are being met by her legal guardian. As for L.C. and her mother, there is no evidence that L.C.'s mother is unable to care for L.C. aside from Defendant's unsupported assertions. Moreover, there is no indication that Defendant's fiancée was suffering from or incapacitated by COVID-19 at the time she was interviewed by a probation officer for the Compassionate Release Report.

Defendant's good behavior while in the BOP is commendable. However, rehabilitative efforts do not constitute extraordinary and compelling circumstances warranting defendant's release. *See* U.S.S.G. § 1B1.13, application note 3

("Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement.).

Finally, "[i]n determining whether to grant a motion to modify a sentence, a court must consider the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Gileno*, 448 F. Supp. 3d. 183, 185 (D. Conn. 2020); *see also* 18 U.S.C. § 3582(c)(1)(A) (directing courts to consider these factors for every request for early release). Additionally, "a reduction in sentence under [the First Step Act] requires a determination that '[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g).'" *United States v. Eberhart*, 448 F. Supp. 3d 1086, 1089 (N.D. Ca 2020) (quoting U.S.S.G. § 1B1.13(2)). A defendant's failure to show that both section 3142(g) and section 3553(a) favor a reduced sentence is fatal to such a request. *See United States v. Brummett*, 2020 WL 1492763, at *3–4 (concluding that the danger defendant posed to the community and the section 3553(a) factors each provided an independent basis for denying a request for compassionate release).

Here, Defendant committed very serious crimes involving his leadership of a large-scale cocaine, crack cocaine, and marijuana distribution conspiracy. He possessed dangerous firearms in furtherance of his crimes. Defendant and his co-conspirators were also tied to one murder and a murder-for-hire scheme. To release

10

defendant more than eleven years before his projected release date would undermine the seriousness of his crimes, fail to provide just punishment or adequate deterrence to criminal conduct, and fail to ensure the safety of the community.

For the foregoing reasons, Defendant has not met his burden of proving that "extraordinary and compelling reasons" exist to support the requested relief.

Accordingly, the motion for compassionate release or reduction in sentence [Doc. No. 861] is **DENIED**.

Dated this 20th day of April, 2021.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE